DANN LAW
Javier L. Merino #078112014
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Telephone: 216.373.0539
Facsimile: 216.373.0536
jmerino@dannlaw.com
notices@dannlaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## NEWARK DIVISION

| | |
|---|---|
| **PETER MIROS** | Case No. |
| and | JUDGE |
| **KATHARINE MIROS** | MAGISTRATE JUDGE |
| Plaintiffs, | **COMPLAINT FOR DAMAGES** |
| v. | **DEMAND FOR JURY TRIAL** |
| **NEWREZ LLC d.b.a. SHELLPOINT MORTGAGE SERVICING** | |
| and | |
| **HOMEBRIDGE FINANCIAL SERVICES, INC.** | |
| Defendants. | |

Plaintiffs Peter Miros and Katharine Miros, through counsel, state as follows for their complaint against Defendants NewRez LLC d.b.a. Shellpoint Mortgage Servicing and Homebridge Financial Services, Inc.:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs Peter Miros ("Peter" or "Mr. Miros") and Katharine Miros ("Katharine" or "Mrs. Miros") (collectively "Plaintiffs" or the "Miroses") are the owners of real property and improvements located thereon located at and commonly known as 18 Gloria Drive, Allendale, NJ 07401 (the "Home").

2.      Plaintiffs maintain the Home as their primary, principal residence and have done so at all times relevant to this matter.

3.      In order to refinance a pre-existing mortgage loan on the Home, on or about March 25, 2016, Plaintiffs borrowed money and executed a note in the amount of $659,848.00 payable to HomeBridge Financial Services, Inc., d.b.a. Real Estate Mortgage Network (the "Note") and granted a contemporaneous mortgage on the Home to HomeBridge Financial Services, Inc., d.b.a. Real Estate Mortgage Network (the "Mortgage") to secure payment of the Note (collectively, the "Loan"). *See*, a copy of the Loan documents is attached as Exhibit 1.

4.      Defendant HomeBridge Financial Services, Inc. ("HomeBridge") is the original creditor of the Loan. *See*, id.

5.      HomeBridge acted as servicer of the Loan at all times relevant from March 25, 2016 through November 1, 2018.

6.      Defendant NewRez LLC d.b.a. Shellpoint Mortgage Servicing ("Shellpoint") is the current servicer of the Loan and has serviced the Loan since November 2, 2018.

7.      This Court has jurisdiction over claims against Shellpoint pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d) as such claims primarily arise under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), the Real Estate Settlement Procedures Act, 12

U.S.C. §§ 2601, *et seq*. ("RESPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (FDCPA).

8.      This Court has supplemental jurisdiction to hear any and all state law claims pleaded herein against both Shellpoint and Homebridge (collectively "Defendants") or that may subsequently arise pursuant to 28 U.S.C. § 1367.

9.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District and a substantial part of property that is the subject of the action is located within this District.

### SUMMARY OF CLAIMS

10.     This action is primarily filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq*. ("Regulation X").

11.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

12.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

13.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

14.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

15.     The Loan is a "federally related mortgage loan" as that term is defined by 12 C.F.R. § 1024.2(b).

16.     Shellpoint is subject to the aforesaid regulations and does not qualify for the exemption for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4). *See* 12 C.F.R. § 1024.30(b)(1).

17.     Shellpoint is not a "qualified lender", as defined in 12 C.F.R. § 617.700. *See* 12 C.F.R. § 1024.30(b)(3).

18.     Plaintiffs assert claims for relief against Shellpoint for breaches of the specific rules under Regulation X as set forth, *infra*.

19.     Plaintiffs have a private right of action under RESPA and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs. *See* 12 U.S.C. § 2605(f).

20.     Congress enacted the FDCPA to prohibit the "[u]se of abusive, deceptive, and unfair debt collection practices." 15 U.S.C § 1692(a).

21.     Plaintiffs are each a "consumer" under the FDCPA as they are each a natural person and resident of Bergen County, New Jersey obligated or allegedly obligated to pay the Loan. 15 U.S.C. § 1692a(3).

22.     The Loan is a "debt" under the FDCPA as it is an obligation or alleged obligation of Plaintiffs to pay money arising out of a transaction primarily for personal, family, or

household purposes as Plaintiffs purchased the Home for their primary, principal residence and refinanced the preexisting loan for the same through the Loan. 15 U.S.C. § 1692a(5).

23.     Shellpoint is a "debt collector" because it regularly collects or attempts to collect on the Loan and other mortgage loans owed to investors. 15 U.S.C. § 1692a(6).

24.     Plaintiffs assert a claim for relief against Shellpoint for breaches of the specific rules under the FDCPA as set forth, *infra.*

25.     Plaintiffs each have a private right of action under the FDCPA pursuant to 15 U.S.C. § 1692k(a) for the claimed breaches and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

26.     Plaintiffs additionally assert a statutory claim for violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 (the "CFA") against each of the Defendants and a state law claim for breach of contract against HomeBridge.

## **FACTUAL BACKGROUND**

### **(Failure to provide a permanent modification to the Miroses)**

27.     The Miroses fell behind on their obligations under the Loan and sought loss mitigation assistance through HomeBridge.

28.     On or about June 1, 2017, HomeBridge sent correspondence to the Miroses, stating that they are "offering [the Miroses] an opportunity to enter into a conditional Trial Period Plan under the Home Affordable Modification Program" (the "TPP"). *See,* a copy of said correspondence with a copy of the TPP enclosed therewith, attached as Exhibit 2.

29.     Per the June 1, 2017 correspondence and the TPP, to accept the TPP, the Miroses had to execute and return the TPP by June 14, 2017, and remit payment in the amount of $5,385.00 by the end of July 2017 in order to accept the TPP. *See*, id.

30.     Pursuant to the terms of the TPP, the Miroses were obligated to remit monthly payments each in the amount of $5,385.00 in and for the months of July through September 2017. *See*, id.

31.     The Miroses timely accepted the Modification and made all necessary payments thereunder before the end of the month in which each such payment was due. *See*, email correspondence from Mr. Miros to HomeBridge dated June 12, 2017, attached as Exhibit 3.

32.     Following the Miroses' remittance of the third payment under the TPP, thereby satisfying all their obligations under such, HomeBridge failed to provide a permanent loan modification to the Miroses in accordance with the TPP and the Miroses reasonable expectations thereunder.

33.     Despite not receiving a permanent modification upon satisfaction of the TPP, as a showing of good faith and in hopes of eventually having HomeBridge honor its agreement with the Miroses, the Miroses continued to remit monthly payments consistent with the terms of the TPP. *See*, a copy of proof of payments made by the Miroses consistent with and in furtherance beyond the terms of the TPP, attached as Exhibit 4.

34.     On November 2, 2018, servicing rights to the Loan transferred to Shellpoint.

35.     As of November 2, 2018, the Miroses still had not received the expected permanent modification pursuant to the terms of the TPP.

36.     Upon learning of the servicing transfer, the Miroses immediately began to discuss the issue regarding the TPP and the permanent modification with Shellpoint.

37.     In or around October 2018, a representative of Shellpoint instructed the Miroses to hold any payments under the terms of or in furtherance of the TPP until Shellpoint received further information from Homebridge regarding the Miroses' modification file.

38.     The Miroses persistently followed up with Shellpoint on the status of the modification.

39.     On or about February 11, 2019, despite being assured that Shellpoint was working on the issues related to the TPP and expected permanent modification, Shellpoint sent correspondence captioned "IMPORTANT: NOTICE OF INTENTION TO FORECLOSE UNDER THE 1995 FAIR FORECLOSURE ACT OF NEW JERSEY (2A:50-56)" stating that Shellpoint would move to foreclose upon the Home if it did not receive a reinstatement payment in the amount of $63,261.91 on or before March 28, 2019 ("Intent to Foreclose Notice"). *See*, a copy of the Intent to Foreclose Notice, attached as Exhibit 5.

40.     Frustrated by the lack of progress and worried about the Mr. Miros emailed Gabriel Scotland, another representative of Shellpoint, on March 4, 2019 following up on a previous telephone call with him for another status update on when the permanent modification would be ready. *See*, a copy of the email thread containing this communication, attached as Exhibit 6.

41.     Mr. Scotland responded to Mr. Miros via email correspondence stating that "we are waiting on the modification agreement to be completed" and "*[w]e will honor everything the prior servicer approved you for.*" *See*, id (emphasis added).

42.     With the deadline in the Intent to Foreclose Notice quickly approaching and with little progress being made with Shellpoint, the Miroses sought assistance of legal counsel to help in having Shellpoint correct Defendants' errors.

**(Unsuccessful attempts to obtain information from Shellpoint and to have Shellpoint correct the errors committed as to the Loan)**

43.     The Miroses, through counsel, sent correspondence dated April 2, 2019, classified as a notice of error pursuant to 12 C.F.R. § 1024.35, and captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to honor the terms of a trial loan modification and provide a permanent loan modification", to Shellpoint at the address designated by Shellpoint for the receipt of notices of error and requests for information pursuant to 12 C.F.R. §§ 1024.35(c) and 1024.36(b), respectively (the "Shellpoint Address") via Certified U.S. Mail, Tracking No. 70182290000096119061 ("NOE #1"). *See*, a copy of NOE #1, attached as Exhibit 7.

44.     Through NOE #1, the Miroses alleged that Shellpoint committed an error related to the Loan by continuing in the erroneous footsteps of HomeBridge in failing to honor the terms of the TPP in a timely manner and provide a permanent modification of the Loan to the Miroses. *See*, id.

45.     Shellpoint received NOE #1 at the Shellpoint Address on April 9, 2019. *See*, a copy of the tracking information for NOE #1 from the USPS's website (www.usps.com), attached as Exhibit 8.

46.     On or about April 30, 2019, Shellpoint sent correspondence to the Miroses with the subordinate note and mortgage necessary to effectuate the Standalone Partial Claim to bring their Loan current once more (the "SPC"). *See*, a copy of this correspondence along with the executed SPC enclosed therewith, attached as Exhibit 9.

47.     The Miroses executed the SPC on or about May 9, 2019 and promptly returned the same to Shellpoint via FedEx. *See*, a copy of the FedEx label used to ship the executed SPC to Shellpoint, attached as Exhibit 10; *see also*, Exhibit 9.

48.     Shellpoint sent correspondence to the Miroses dated May 9, 2019 in response to NOE #1 ("Response to NOE #1"). *See*, Response to NOE #1, attached as Exhibit 11.

49.     Through Response to NOE #1, Shellpoint "acknowledge[d]" the "inflight modification issue" and stated that the modification agreement, in the form of the SPC, was delivered on May 6, 2019 and that Shellpoint was "waiting for the signed agreement to be returned so that we can apply the completed modification to the account." *See*, id.

50.     The SPC was in the amount of $77,214.48 which was to bring the Loan current and due and owing for the June 1, 2019 payment. *See*, Exhibit 9.

51.     Despite the Miroses' execution of and return of the SPC, upon logging into Shellpoint's Customer Service Portal on or about May 22, 2019, Shellpoint was claiming that the Loan was due and owing for the April 1, 2019 payment and that $10,240.86 in payments were past due as well as $118.52 in late fees. *See*, a copy of a printout pertaining to the Loan from Shellpoint's Consumer Web Portal, attached as Exhibit 12.

52.     In an attempt to ascertain why the partial did not cure the delinquency on the Loan, the Miroses, through counsel, sent correspondence dated June 13, 2019, classified as a request for information  pursuant to 12 C.F.R. § 1024.36, and captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36", to Shellpoint at the Shellpoint Address via Certified U.S. Mail, Tracking No. 70182290000096115353 ("RFI #1"). *See*, a copy of RFI #1, attached as Exhibit 13.

53.     Through RFI #1, the Miroses requested information relating to the SPC and any prior partial claims utilized on the Loan. *See*, *id*.

54.     Shellpoint received RFI #1 at the Shellpoint Address on or about June 18, 2019. *See*, a copy of the tracking information for RFI #1 from the USPS's website (www.usps.com), attached as Exhibit 14.

55.     Shellpoint failed to provide a substantive response to RFI #1 in a timely manner. See, Exhibits 13 and 14.

56.     As Shellpoint failed to respond to RFI #3, in a subsequent attempt to obtain the information requested through RFI #3, the Miroses, through counsel, sent correspondence dated August 22, 2019, classified as a notice of error pursuant to 12 C.F.R. § 1024.35, and captioned "Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a Request for Information as required by 12 C.F.R. § 1024.36", to Shellpoint at the Shellpoint Address via Certified U.S. Mail, Tracking No. 70182290000096116626 ("NOE #2"). *See*, a copy of NOE #2, attached as Exhibit 15.

57.     Shellpoint received NOE #2 at the Shellpoint Address on or about August 28, 2019. *See*, a copy of the tracking information for NOE #3 from the USPS's website (www.usps.com), attached as Exhibit 16.

58.     Shellpoint sent correspondence to the Miroses dated October 24, 2019 in response to NOE #2 ("Response to NOE #2"). *See*, a copy of Response to NOE #2, attached as Exhibit 17.

59.     Through Response to NOE #2, Shellpoint admitted the error alleged through NOE #2, but more importantly, claimed that the SPC "brought the [L]oan due for the June 1, 2019

contractual payment" but that the Loan was past due for the payments due and owing for September 2019 and October 2019. *See*, id.

60.     The Miroses have made any and all payments due and owing on the Loan since the implementation of the SPC.

61.     Shellpoint, as evidenced through the Response to NOE #2, claims that the Loan was brought current, due and owing for the June 1, 2019 payment, through the SPC, when the Loan was due and owing for the April 1, 2019 payment after the implementation of the SPC. *See*, Exhibits 12 and 15.

62.     Upon information and belief, Shellpoint only applied $67,098.62 of the $77,214.48 from the SPC to the Loan account, leaving the Miroses delinquent on their obligations under the Loan despite the SPC. *See* Shellpoint Loan History Summary Excerpt, p. 4, attached as Exhibit 18.

## DAMAGES AND IMPACT ON THE MIROSES

63.     To date, Defendants have not corrected their errors in failing to properly offer and implement the SPC which has led Shellpoint to improperly declare that Plaintiffs are at least two (2) months delinquent on their obligations under the Loan.

64.     Due to Defendants' actions, the Miroses remained in delinquent and default statuses on their Loan for a longer time than they would have been had Defendants acted appropriately, have been charged unwarranted fees and costs due to the delinquency that was unnecessarily protracted, and have subsequently suffered harm to their credit rating and a significant delay in the rehabilitation of the same.

65.     Defendants' improper actions have further caused Plaintiffs to suffer from other damages including:

      a. Legal fees and expenses to submit requests for information and notices of error to Shellpoint in an attempt to have them act in accordance with the terms of the Loan, the TPP, and the SPC as well as state and federal law and guidelines;

      b. The Loan has been assessed improper fees and charges due to the unnecessary protraction of the default and delinquency;

      c. The loss of at least $10,115.86, the portion of funds from the SPC that was not applied to the Loan;

      d. Severe emotional distress driven by the protracted default and delinquency and by fear that such would be the start of a slippery slope leading to foreclosure unless the Miroses pay for fees and amounts that are not properly due and owing and are not otherwise warranted which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

66.     Throughout this entire ordeal, the Mirosess have timely fulfilled all of their obligations on the Loan, the TPP, and the SPC, as required since the TPP and have simply wanted to be able to enjoy the benefit of the same and have their payments applied properly without fear of unwarranted fees and allegations of delinquency when they thought they were finally back on their feet.

## PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY SHELLPOINT

67.     Shellpoint's actions are part of a pattern and practice of behavior in violation of Plaintiffs' rights and in abdication and contravention of Shellpoint's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

68.     At the time of the filing of this Complaint, Shellpoint has had Five Hundred Eighty Four (584) consumer complaints lodged against it specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's public accessible online "Consumer Complaint Database". *See,* https://www.consumerfinance.gov/data-research/consumer-complaints/.

69.     As of the filing of this Complaint, Shellpoint has had Four Hundred Seventy Nine (479) consumer complaints lodged against it nationally specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages. Each such complaint is filed and cataloged in the CFPB's public accessible online "Consumer Complaint Database". *See,* https://www.consumerfinance.gov/data-research/consumer-complaints/.

70.     Plaintiffs have reviewed the CFPB's consumer complaint database and has identified fifteen (15) complaints from other borrowers alleging RESPA violations by Shellpoint which evidence conduct demonstrating that Shellpoint has engaged in a pattern and practice of violating RESPA with respect to other borrowers. *See,* the aforementioned consumer complaints with the date, details, and a narrative disclosed by each consumer set forth in each complaint, attached as Exhibit 19.

## COUNT ONE: AGAINST HOMEBRIDGE
### BREACH OF CONTRACT

71.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 66, in their entirety, as if fully rewritten.

72.     The TPP is a contract between HomeBridge and Plaintiffs. *See*, Exhibit 2.

73.     HomeBridge breached the TPP by refusing or otherwise failing to implement a permanent modification upon Plaintiffs' completion of the TPP. *See*, id.

74.     Plaintiffs' dutifully performed their obligations pursuant to the TPP by timely returning the executed TPP and making all necessary payments due and owing under the same. *See*, Exhibits 2 and 4.

75.     As further pleaded, *supra*, Plaintiffs have been harmed by, and continue to suffer from harm resulting from Homebridge's breach of the TPP by refusing to implement a permanent modification upon Plaintiffs' satisfaction of their obligations under the TPP, significantly delaying the implementation of the eventual SPC.

76.     Plaintiffs were forced to retain counsel to aid in enforcing the agreement reached pursuant to the TPP, including incurring attorneys' fees and postage costs in preparing and mailing the Initial RFI #1 , as well as NOE #1 and NOE #2 (collectively, the "NOEs").

77.     Further, HomeBridge's intentional and outrageous conduct has caused Plaintiffs to suffer extreme emotional distress driven by the fear that they lose their Home at foreclosure sale and be evicted from the Home, which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress, which was a foreseeable result of their breach of the TPP.

78.     As a result of HomeBridge's actions, HomeBridge is liable to Plaintiffs for actual damages as further alleged, *supra*.

### COUNT TWO: AGAINST HOMEBRIDGE AND SHELLPOINT
### VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

79.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 66, in their entirety, as if fully rewritten

80.     Defendants are each in privity of contract with Plaintiffs through the Loan and the TPP, and Shellpoint is further in privity of contract with Plaintiffs through the SPC, and as such, each of the Defendants is obligated by contract and common law to act in good faith and to deal fairly with Plaintiffs. *See*, Exhibits 1, 2, and 9.

81.     The purpose of the covenant of good faith and fair dealing is to guarantee that the parties remain committed to the intended and agreed upon expectations of the parties in their performance.

82.     Defendants have breached this duty by failing to honor the terms of the TPP in a timely manner by refusing to implement a permanent loan modification on the Loan in a timely manner following Plaintiffs' completion of the TPP.

83.     Shellpoint has further breached this duty by failing to honor the terms of the SPC by refusing or otherwise failing to properly apply the amounts from the SPC to the Loan. *See*, Exhibits 9 and 12.

84.     Defendants have each acted in bad faith, dishonestly, and with an improper motive to injure the rights of Plaintiffs.

85.     Due to Defendants' conduct, Plaintiffs have suffered actual damages, including but not limited to, legal fees and expenses to retain counsel to prepare RFI #1 and the NOEs, and ultimately to prepare, file, and prosecute this case to remedy Defendants' wrongful conduct.

86.     Plaintiffs have suffered, and continue to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress.

87.     As a result of Defendants' actions, Defendants are liable to Plaintiffs for actual damages as further alleged, *supra.*

## COUNT THREE: AGAINST HOMEBRIDGE AND SHELLPOINT
## VIOLATION OF THE CFA, N.J.S.A § 56:8-2

88.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 66, in their entirety, as if fully rewritten.

89.     The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate...

N.J.S.A. § 56:8-2.

90.     In the operation of its business, Defendants have each engaged in the use of unconscionable commercial practices, as further described, *supra.*

91.     Each unconscionable practice, false promise, misrepresentation and/or knowing omission of material fact by Defendants' described, *supra,* constitutes a separate violation under the CFA.

92.     Defendants are each a "person" as defined by N.J.S.A. § 56:8-1(d) as each of the Defendants is a partnership, corporation, company, trust, business entity, or business association.

93.     Plaintiffs, relying on the express terms of the TPP and SPC, complied with all their obligations thereunder making all necessary payments due under the TPP, payments in excess of those required under the TPP, and properly executing and accepting the SPC. *See,* Exhibits 2, 4, and 9.

94.     Despite Plaintiffs having complied with the terms of the TPP, Defendants failed to act in a reasonable or timely manner in offering or otherwise implementing the permanent modification, eventually accomplished through the SPC.

95.     Despite Plaintiffs executing and accepting the SPC, Shellpoint failed to properly apply the funds from such and failed to bring the Loan due and owing for the June 1, 2019 payment as was the purpose and intent. *See,* Exhibits 9 and 12.

96.     Defendants' delays and refusals to timely permanently modify the Loan subsequent to Plaintiffs' satisfaction of all their obligations under the TPP constitute false promises, misrepresentations, and/or unconscionable acts under the CFA.

97.     Shellpoint's failures to bring the Loan current through the implementation of the SPC, despite explicitly having claimed to do so through Response to NOE #2, constitute false promises, misrepresentations, and/or unconscionable acts under the CFA. *See,* Exhibits 9, 12, and 17.

98.     Defendants' unconscionable commercial practices have caused Plaintiffs ascertainable losses, further alleged, *supra*, including:

a.      A significant delay in the implementation of the SPC and the delay in the rehabilitation of credit resulting from the same;

b.      Having to retain and pay legal counsel to submit RFI #1 and the NOEs; and,

c.      Extreme emotional distress driven by the fear that they lose their Home at foreclosure sale and be evicted from the Home, which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

99.    Shellpoint's unconscionable commercial practices have caused Plaintiffs ascertainable losses, further alleged, *supra*, including:

a.      The loss of at least $10,115.86, the portion of funds from the SPC that was not applied to the Loan; and,

b.      Continued harm to Plaintiffs' credit and further delay in the rehabilitation of the same due to Shellpoint failing to bring the Loan current and claiming Plaintiffs are delinquent on their obligations under the Loan following their erroneous attempt to properly implement the SPC.

100.    As a result of Defendants' actions, Defendants are each liable to Plaintiffs for actual damages as further alleged, *supra*. Plaintiffs are entitled to treble the damages caused by Defendants' violations of the CFA. N.J.S.A. § 56:8-19.

## COUNT FOUR: AGAINST SHELLPOINT
### BREACH OF CONTRACT

101.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 66, in their entirety, as if fully rewritten.

102.    The SPC is a contract between Shellpoint and Plaintiffs. *See*, <u>Exhibit 9</u>.

103.    Shellpoint breached the SPC by failing to properly apply the funds from the SPC in a manner so as to bring the Loan current and due and owing for the payment due June 1, 2019, as was the intent and purpose of the same. *See*, <u>Exhibits 9, 12, and 17.</u>

104.    Plaintiffs' properly accepted and satisfied any obligations pursuant to the SPC. *See*, <u>Exhibits 9 and 12</u>.

105.    As further pleaded, *supra*, Plaintiffs have been harmed by, and continue to suffer from harm resulting from Homebridge's breach of the SPC.

106.    Plaintiffs were forced to retain counsel to aid in enforcing the agreement reached pursuant to the SPC, including incurring attorneys' fees and postage costs in preparing and mailing RFI #1 and NOE #2.

107.    Further, Shellpoint's intentional and outrageous conduct has caused Plaintiffs to suffer extreme emotional distress driven by the fear that they lose their Home at foreclosure sale and be evicted from the Home, which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress, which was a foreseeable result of their breach of the SPC.

108.    As a result of Shellpoint's actions, Shellpoint is liable to Plaintiffs for actual damages as further alleged, *supra*.

### COUNT FIVE: AGAINST SHELLPOINT
### UNJUST ENRICHMENT

109.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 66, in their entirety, as if fully rewritten.

110.    Plaintiffs conferred a benefit, the $77,214.48 from the SPC which was to bring the Loan current and due and owing for the June 1, 2019 payment, on Shellpoint and Shellpoint had knowledge of that benefit. *See*, Exhibits 9 and 12.

111.    Shellpoint voluntarily accepted and retained the benefit conferred.

112.    Through Response to NOE #2, Shellpoint claims to have brought the Loan current and due and owing for the June 1, 2019 payment through the SPC funds, but after Shellpoint's implementation of the SPC, the Loan was due and owing for the April 1, 2019 payment. *See*, Exhibits 12, 17, and 18.

113.    Upon information and belief, Shellpoint only applied $67,098.62 of the $77,214.48 from the SPC to the Loan account, leaving the Miroses delinquent on their obligations under the Loan despite the SPC. *See*, Exhibit 18, p. 4.

114.    Upon information and belief, Shellpoint unjustly retained at least $10,115.86 of the SPC funds. *See*, Exhibits 9 and 12.

115.    The circumstances render Shellpoint's retention of said benefit inequitable as Plaintiffs did not receive the value of the benefit, that is, having such funds applied to bring their Loan current and due and owing for the June 1, 2019 payment.

116.    Shellpoint has been unjustly enriched at the direct expense of Plaintiffs in the amount of at least $10,115.86. *See*, id.

117.    As a result of Shellpoint's unjust enrichment, Shellpoint is liable to Plaintiffs for actual damages as further described, *supra*, including disgorgement of all monies unlawfully accepted by Shellpoint from Plaintiffs.

## COUNT SIX: AGAINST SHELLPOINT
### CONVERSION

118.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 66, in their entirety, as if fully rewritten.

119.    Plaintiffs conferred $77,214.48 to Shellpoint through the SPC which was to bring the Loan current and due and owing for the June 1, 2019 payment to Shellpoint. *See*, Exhibits 9 and 17.

120.    Through Response to NOE #2, Shellpoint claims to have brought the Loan current and due and owing for the June 1, 2019 payment through the SPC funds, but after Shellpoint's implementation of the SPC, the Loan was due and owing for the April 1, 2019 payment. *See*, Exhibits 12 and 17.

121.    Upon information and belief, Shellpoint only applied $67,098.62 of the $77,214.48 from the SPC to the Loan account, leaving the Miroses delinquent on their obligations under the Loan despite the SPC.

122.    Shellpoint's conversion of Plaintiffs' funds has caused Plaintiffs to suffer the loss of their personal property, specifically at least $10,115.86 from the SPC and the out-of-pocket damage of having to retain counsel to remedy this situation.

123.    Shellpoint's conversion was made willfully, recklessly, and in conscious disregard of Plaintiffs' rights which is evidenced by subsequent, false claims through Response to NOE #2 that they had utilized the SPC funds in full to bring the Loan due and owing for the June 1, 2019 payment. *See*, Exhibits 9, 12, and 17.

124.    As pled, *supra*, Plaintiffs have been harmed by, and continue to suffer from harm from Defendants' conversion as they have wrongfully been declared to be delinquent in their

obligations under the Loan, have been charged unwarranted fees and costs due to this manufactured delinquency, and have subsequently suffered harm to their credit rating.

125. In addition, Shellpoint's intentional and outrageous conduct has caused Plaintiffs to suffer extreme emotional distress driven by this manufactured delinquency and by fear that this manufactured delinquency would be the start of a slippery slope leading to a potential default and foreclosure unless they pay for fees and other amounts which are not warranted which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

126. As a result of Shellpoint's conversions, Shellpoint is liable to Plaintiffs for actual damages as further described, *supra*.

127. Further as Shellpoint's conversion was undertaken and maintained willfully, recklessly, and in conscious disregard of Plaintiffs' rights, Plaintiffs are entitled to punitive damages from Shellpoint.

**COUNT SEVEN: AGAINST SHELLPOINT**
**VIOLATION OF 12 C.F.R. § 1024.36(d) AND 12 U.S.C. §§ 2605(k)(1)(D) AND (E)**

**(Failure to properly respond to a request for information)**

128. Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 70, in their entirety, as if fully rewritten.

129. 12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

130.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a)

provides that "[a]n information request is submitted by a borrower if the information request is

submitted by an agent of the borrower."

131.    12 C.F.R. § 1024.36(d)(1) provides, in relevant part, that:

> [A] servicer must respond to an information request by either:
> (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
> (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

132.    Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

> A servicer must comply with the requirements of paragraph (d)(1) of this section:
> (A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan;
> (B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

133.    12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related

mortgage shall not...fail to comply with any other obligation found by the Bureau of Consumer

Financial Protection, by regulation, to be appropriate to carry out the consumer protection

purposes of this chapter."

134.    RFI #1 constituted a request for information as defined by 12 C.F.R. § 1024.36.

*See*, Exhibit 13.

135.    Plaintiffs sent RFI #1 to Shellpoint at the Shellpoint Address and Shellpoint received it at the Shellpoint Address on or about June 18, 2019. *See*, Exhibit 13 and 14.

136.    Shellpoint failed to send written notice to Plaintiffs in response to RFI #1 as required by 12 C.F.R. § 1024.36(d) which constitutes a violation of the same.

137.    Shellpoint's failure to properly respond to RFI #1 caused Plaintiffs to prepare and send NOE #2 and incur the fees and costs associated therewith in an attempt to obtain the requested information. *See*, Exhibits 13 and 15.

138.    Through Response to NOE #2, Shellpoint admitted that they committed an error by failing to respond to RFI #1. *See*, Exhibit 17.

139.    Shellpoint's actions in failing to properly send a written response to RFI #1 are part of a pattern and practice of behavior in violation of Plaintiffs' rights and an abdication of Shellpoint's responsibilities under RESPA.

140.    As a result of Shellpoint's actions, Shellpoint is liable to Plaintiffs for statutory damages and actual damages as further described, *supra*, including but not limited to but not limited to costs and fees for the preparation and mailing of NOE #2, which would not have been necessary but for Shellpoint's failure to properly respond to RFI #1. 12 U.S.C. § 2605(f)(1); *see*, Exhibits 13 and 15.

141.    Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT EIGHT: AGAINST SHELLPOINT
### VIOLATION OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(k)(1)(C) AND (E)

**(Failure to properly respond to a notice of error)**

142.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 70, in their entirety, as if fully rewritten.

143.    12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

144.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

145.    12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

> (A)    Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

> (B)    Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

146.    12 U.S.C. § 2605(k)(1)(C) provides that "[a] servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors

relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

147.    12 U.S.C. § 2605(k)(1)(E) provides that a servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

148.    NOE #1 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See*, Exhibit 7.

149.    Through NOE #1, Plaintiffs alleged that Shellpoint committed an error related to the Loan by continuing in the erroneous footsteps of HomeBridge in failing to honor the terms of the TPP in a timely manner and provide a permanent modification of the Loan to the Miroses. *See*, id.

150.    Plaintiffs sent NOE #1 to Shellpoint at the Shellpoint Address and Shellpoint received NOE #1 at the Shellpoint Address on April 9, 2019. *See*, Exhibits 7 and 8.

151.    Shellpoint sent Response to NOE #1 to the Miroses through which Shellpoint "acknowledge[d]" the "inflight modification issue" and stated that the modification agreement, in the form of the SPC, was delivered on May 6, 2019 and that Shellpoint was "waiting for the signed agreement to be returned so that we can apply the completed modification to the account." *See*, Exhibit 11.

152.    Plaintiffs did not receive nor did Shellpoint send any further written notice regarding NOE #1 after sending Response to NOE #1.

153.   Through Response to NOE #1 Shellpoint did not fulfill the requirements of 12 C.F.R. § 1024.35(e)(1)(i)(B) as Shellpoint did not claim that an error did not occur. *See*, id.

154.   Through Response to NOE #1 Shellpoint did not fulfill the requirements of 12 C.F.R. § 1024.35(e)(1)(i)(A) as Shellpoint did not fully correct the alleged errors since the SPC was not properly applied so as to resolve the errors alleged through NOE #1—a proper correction would have brought the Loan current and due and owing for the June 1, 2019 payment. *See*, id.

155.   Shellpoint, in issuing Response to NOE #1, failed to fulfill the requirements of 12 C.F.R. § 1024.35(e)(1)(i)(A) or 12 C.F.R. § 1024.35(e)(1)(i)(B).

156.   Shellpoint failed to comply with 12 U.S.C. § 2605(k)(1)(C) as to NOE #1 and the errors alleged therein by failing to take timely action to respond to properly respond to Plaintiffs regarding mortgage loan problems, which is a standard servicer duty.

157.   Shellpoint failed to comply with 12 U.S.C. § 2605(k)(1)(E) as to NOE #1 and the errors alleged therein by neglecting its obligations pursuant to 12 C.F.R. § 1024.35(e).

158.   Shellpoint's failure to properly respond to NOE #1 constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E).

159.   Shellpoint's actions in failing to properly investigate and respond to NOE #1 are part of a pattern and practice of behavior in violation of Plaintiffs' rights and an abdication of Shellpoint's responsibilities under RESPA.

160.   As a result of Shellpoint's actions, Shellpoint is liable to Plaintiffs for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

161.    Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT NINE: AGAINST SHELLPOINT
### VIOLATIONS OF THE FDCPA, 15 U.S.C. §§ 1692, *et seq.*

162.    Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 70, in their entirety, as if fully rewritten.

163.    Plaintiffs are each a "consumer" as they are each a natural person residing in Bergen County, NJ and are obligated or allegedly obligated to pay on the Loan sought to be collected by Shellpoint. 15 U.S.C. § 1692a(3).

164.    The Loan is a "debt" as Plaintiffs obtained the Loan and became obligated thereunder for personal, household, or family use. 15 U.S.C. § 1692a(5).

165.    Shellpoint is a "debt collector" as defined by the FDCPA as Shellpoint began servicing the Loan at a time when the Loan was in default. 15 U.S.C. § 1692a(6).

166.    As outlined above, *supra*, Shellpoint violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect a debt by: (a) Refusing to timely honor the terms of the TPP which Plaintiffs dutifully accepted and performed under by implementing a permanent loan modification; (b) refusing to properly apply the funds from the SPC; (c) subsequently claiming Plaintiffs are delinquent in their obligations on the Loan.

167.    The actions described, *supra*, are also each acts in which Shellpoint violated 15 U.S.C. § 1692e(2).

168.    Due to Shellpoint's conduct, Plaintiffs suffered actual damages, further described, *supra*, including but not limited to:

a. A significant delay in the implementation of the SPC and the delay in the rehabilitation of credit resulting from the same;

b. Having to retain and pay legal counsel to submit the RFIs and NOEs;

c. Extreme emotional distress driven by the fear that they lose their Home at foreclosure sale and be evicted from the Home, which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress;

d. The loss of at least $10,115.86, the portion of funds from the SPC that was not applied to the Loan; and,

e. Continued harm to Plaintiffs' credit and further delay in the rehabilitation of the same due to Shellpoint failing to bring the Loan current and claiming Plaintiffs are delinquent on their obligations under the Loan following their erroneous attempt to properly implement the SPC.

169. As a result of Shellpoint's actions, Shellpoint is liable to Plaintiffs for actual damages as further described, *supra*, statutory damages per Plaintiff, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Peter Miros and Katharine Miros pray that this Court grant judgment against Defendants NewRez LLC d.b.a. Shellpoint Mortgage Servicing and Homebridge Financial Services, Inc., and award them the following:

A. For an award of actual damages from Defendant Homebridge Financial Services, Inc. as to Count One;

B. For an award of actual damages from Defendants NewRez LLC d.b.a. Shellpoint Mortgage Servicing and Homebridge Financial Services, Inc. as to Count Two;

C. For an award of treble actual damages, attorneys' fees, and costs from Defendants NewRez LLC d.b.a. Shellpoint Mortgage Servicing and Homebridge Financial Services, Inc. as to the allegations contained in Count Three;

D. For an award of actual damages from Defendant NewRez LLC d.b.a. Shellpoint Mortgage Servicing as to Counts Four through Nine;

E. For an award of punitive damages as to Count Six;

F. For an award of statutory damages against Defendant NewRez LLC d.b.a. Shellpoint Mortgage Servicing of up to Two Thousand Dollars ($2,000.00) for each and every separate violation of RESPA alleged in Counts Seven and Eight;

G. For an award of statutory damages against Defendant NewRez LLC d.b.a. Shellpoint Mortgage Servicing in the amount of One Thousand Dollars ($1,000.00) per Plaintiff for violations of the FDCPA as alleged in Count Nine;

H. For an award of attorneys' fees and costs against Defendant NewRez LLC d.b.a. Shellpoint Mortgage Servicing as to Counts Seven, Eight, and/or Nine;

I. Such other relief which this Court may deem appropriate.

Respectfully submitted:

/s/ *Javier L. Merino*
Javier L. Merino
DANN LAW
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Telephone: 216.373.0539
Facsimile: 216.373.0536
jmerino@dannlaw.com
notices@dannlaw.com

*Counsel for Plaintiffs Peter and Katharine Miros*

## **JURY DEMAND**

Plaintiffs Peter Miros and Katharine Miros hereby request a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ *Javier L. Merino*
Javier L. Merino
*Counsel for Plaintiffs Peter and Katharine Miros*